UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MIRNA C.,[1]<br>    *Plaintiff*<br>v.<br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,<br>    *Defendant*. | No. 3:21cv1296 (MPS) |

**RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**

    Plaintiff Mirna C. brings this administrative appeal against the Commissioner of Social Security under 42 U.S.C. § 405(g) challenging the Commissioner's denial of her application for supplemental security income. On appeal, the Plaintiff argues that (1) the Administrative Law Judge ("ALJ") failed to develop the administrative record; (2) the ALJ did not properly evaluate the Plaintiff's pain; and (3) substantial evidence does not support the ALJ's step 5 findings. ECF No. 13. The defendant Commissioner has filed a motion to affirm the ALJ's decision on the grounds that the ALJ did not err and the decision is supported by substantial evidence. ECF No. 16. For the reasons that follow, I find that the ALJ failed to develop the record as to the Plaintiff's physical impairments and therefore grant the Plaintiff's motion to remand the case to the Commissioner for further proceedings.

    I assume familiarity with the Plaintiff's medical history, as summarized in the Plaintiff's statement of facts, ECF No. 13-1, which the Commissioner incorporates and supplements, ECF No. 16-2, and which I adopt and incorporate by reference. I also assume familiarity with the five

---

[1] As set forth in Chief Judge Underhill's January 8, 2021 Standing Order, the Plaintiff is identified by her first name and last initial. See Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

sequential steps used in the analysis of disability claims, the ALJ's opinion, and the record.[2]  I cite only those portions of the record and the legal standards necessary to explain this ruling.

I.      **Standard of Review**

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).  The Court "may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence' - that is, if no reasonable factfinder could have reached the same conclusion as the ALJ." *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022).  "The Court does not reach the second stage of review -- evaluating whether substantial evidence supports the ALJ's conclusion -- if the Court determines that the ALJ failed to apply the law correctly." *John C. W. v. Kijakazi*, No. 3:21CV1081(SALM), 2022 WL 3025718, at *2 (D. Conn. Aug. 1, 2022).

> Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

II.     **ALJ's Decision**

The ALJ found that the Plaintiff had not engaged in substantial gainful activity since July 23, 2018, her application date.  R. 18.  He next found that the Plaintiff, who was 52 years old, suffered from severe physical and mental impairments of radiculopathy, hypertension, obesity, depressive disorder, and anxiety disorder.  R. 18, 25.  Her impairments, the ALJ concluded, did not, singly or in combination, meet or medically equal the severity of any of the listed impairments

---

[2] Citations to the administrative record, ECF No. 9, appear as "R" followed by the page number appearing on the bottom right hand corner of the record.

in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. 29. *Id.* The ALJ determined that the Plaintiff retained the residual functional capacity ("RFC")[3] to perform light[4] work except that she is limited to

> standing and/or walking for four hours; sitting for six hours; requires a sit/stand option, wherein she is able to sit for thirty minutes, alternate to a standing position for five minutes, then resume sitting; never climb ladders, ropes, or scaffolds; occasionally climb stairs and ramps, balance, stoop, and crouch; never kneel or crawl; frequently handle and finger; no work in exposure to cold; and requires use of a cane for ambulation. The claimant is able to perform simple, routine, and repetitive tasks, sustain concentration, persistence, or pace for two-hour segments, and have occasional, non-collaborative, interaction with coworkers, and brief and superficial (no more than 10% of the workday) interaction with the public. She requires work with little to no changes in duties and/or routines, and no work requiring independent judgment (i.e., no setting duties or schedules for others and no responsibility for the safety of others).

R. 20. Finally, after considering the Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ determined that there were jobs that the Plaintiff could perform, and therefore concluded that she was not disabled at any time between July 23, 2018, and February 12, 2021, the date of the decision. R. 25-26.

## III.   Discussion

The Plaintiff first argues that the ALJ failed to adequately develop the record as to her physical impairments because the record does not contain a medical source statement as to her ability to perform the physical demands of work activities and does not otherwise contain sufficient evidence from which the ALJ could assess her residual functional capacity. I agree.

"The ALJ has an affirmative obligation to develop a complete and accurate medical record." *Mahmud v. Saul*, No. 3:19CV1666(TOF), 2020 WL 6866674, at *10 (D. Conn. Nov. 23,

---

[3] The RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ is required to formulate the RFC "based on all of the relevant medical and other evidence." *Id.*

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

3

2020). *See also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (noting that a "hearing on disability benefits is a non-adversarial proceeding," and as such, "the ALJ generally has an affirmative obligation to develop the administrative record"). This duty exists even when, as in this case, the claimant was represented by counsel. *Id*. "The ALJ's duty to develop the record is not, however, unlimited. The record is only incomplete when it has obvious gaps or inconsistencies." *Martinez v. Saul*, No. 3:19CV1017(TOF), 2020 WL 6440950, at *4 (D. Conn. Nov. 3, 2020). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan,* 168 F.3d 72, 79 n.5 (2d Cir. 1999). "Failure to develop the record is reversible legal error." *Diana P. v. Kijakazi*, No. 3:20CV837(TOF), 2021 WL 4305005, at *7 (D. Conn. Sept. 22, 2021).

"[A] medical source statement is not necessarily required to fully develop the record where 'the record contains sufficient evidence from which an ALJ can assess the [claimant's RFC].'" *Crespo v. Commissioner of Social Security*, No. 3:18CV435(JAM), 2019 WL 4686763, at *3 (D. Conn. Sept. 25, 2019) (quoting *Tankisi v. Comm'r of Soc. Sec*., 521 F. App'x. 29, 34 (2d Cir. 2013)). "According to the *Tankisi* court, the 'sufficient evidence' standard was at least met when the medical records were 'extensive,' 'voluminous,' and included 'an assessment of [the claimant's] limitations from a treating physician.'" *Luz S. v. Kijakazi*, No. 3:20CV1573(JCH), 2022 WL 875690, at *3 (D. Conn. Mar. 24, 2022) (quoting *Tankisi*, 521 F. App'x at 34.); *see also Guillen v. Berryhill*, 697 F. App'x 107, 108-09 (2d Cir. 2017) (remand for failure to develop the record warranted where "[u]nlike *Tankisi*, the medical records obtained by the ALJ do not shed any light on [the claimant's] residual functional capacity.... The medical records discuss [the claimant's] illnesses and suggest treatment for them but offer no insight into how her impairments affect or do

4

not affect her ability to work...."); *Delgado v. Berryhill*, No. 3:17CV54(JCH), 2018 WL 1316198, at *9 (D. Conn. Mar. 14, 2018) (remanding where "the absence of a complete and reliable functional assessment of [the plaintiff's] physical limitations is an obvious gap"). "The determination of whether an administrative record is incomplete without a medical source statement is made on a case-by-case basis, depending on the circumstances of the particular case, the comprehensiveness of the administrative record, and whether the record is sufficiently comprehensive to permit an informed finding by the ALJ." *Faussett v. Saul*, No. 3:18CV738 (MPS), 2020 WL 57537, at *3 (D. Conn. Jan. 6, 2020) (internal quotation marks and citations omitted).

<u>Medical Records as to Physical Impairments</u>

Unlike in *Tankisi*, the medical evidence regarding the Plaintiff's physical impairments is not "extensive" or "voluminous." *Tankisi*, 521 F. App'x at 34. The record here is sparse, consisting of a handful of treatment records. The few records from her treating physicians Dr. Pastrano and Dr. Rosario-Tejeda document the Plaintiff's physical impairments of obesity and chronic back pain. *See* R. 400 (8/15/17 note that she was seen for chronic low back pain and leg pain); R. 470 (3/11/19 note referring Plaintiff to orthopedist for chronic back pain); R. 512-13 (8/17/19 note that Plaintiff was seen for "hypertension, chronic back pain, [and] obesity" and observing that Plaintiff ambulated with a cane.). X-rays of the Plaintiff's lumbar spine showed "[n]o acute osseous abnormality. Mild convex to the left thoracolumbar scoliosis." R. 526.

The record also contains notes from Dr. Carolan, an orthopedist, who saw the Plaintiff for her complaints of chronic back pain. R. 412. The Plaintiff reported that the "pain is persistent and limits her mobility and ability to do many of the activities of daily living." *Id.* On examination, Dr. Carolan observed that the Plaintiff

>moves around the office slowly secondary to obvious discomfort. [H]er range of motion is limited as she has difficulty reaching her patellas with forward flexion. Extension of her back was to 0 and her right and lateral bending was limited to about 10°. In both the sitting and recumbent position [] the straight leg raising was positive at about 60° bilaterally.[5] There is a good range of motion in both hips[,] knees and ankles. I was not able to demonstrate any motor weakness. The patella and ankle reflexes were present.

R. 413. He assessed her with "degeneration of lumbar intervertebral disc." *Id.*

These examination records, however, do not contain any assessments as to the Plaintiff's functional capacity to do physical work-related activities and as such, do not "offer [] insight into how [her] impairments affect or do not affect her ability to work." *Guillen*, 697 F. App'x at 108-09. They fail to provide sufficient information from which the ALJ could reach an informed decision as to the Plaintiff's physical exertional capacity contemplated by the RFC. *See Robles v. Saul*, No. 3:19CV1329(TOF), 2020 WL 5405877, at *6 (D. Conn. Sept. 9, 2020)("where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a)... the Commissioner may not make the connection himself.") (internal quotation marks and citation omitted). And although the record includes x-rays, there is no medical opinion that interprets or discusses the x-ray results in the context of the Plaintiff's functional capabilities and limitations.

Opinion evidence

The record also contains two opinions from physical consultative examinations. After a consultative examination in January 2019 at the request of SSA, Dr. Klufas assessed the Plaintiff with "poor activity tolerance mainly due to arthralgias in [the] lower extremities." R. 429. He

---

[5] A straight-leg raising test "is a means of diagnosing nerve root compression or impingement, which can be caused by a herniated disc. The patient lies flat while the physician raises the extended leg. If the patient feels pain in the back at certain angles (a 'positive test'), the pain may indicate herniation." *Valerio v. Comm'r of Soc. Sec.*, No. 08CV4253(CPS), 2009 WL 2424211, at *3 (E.D.N.Y. Aug. 6, 2009).

noted she "resists range of motion of the knees and has pain on extension." *Id.* Dr. Klufas found that although the Plaintiff can "walk without [an] assistive device, [she] walks at a slower place without it and she generally holds a cane with the left hand." *Id.*

In a subsequent consultative examination, Dr. Reiher diagnosed the Plaintiff with back and leg pain, hypertension, asthma, and depression. R. 481. On examination, he found that "[l]umbar spine shows flexion 40 degrees, full extension, full lateral flexion bilaterally, and full rotary movement bilaterally. SLR [straight-leg raising] negative bilaterally." R. 480. He noted "lumbar tenderness." *Id.* He stated that "[s]trength [was] 5/5 in the upper and lower extremities." *Id.* Dr. Reiher observed that the Plaintiff's gait was "slow and steady with a cane. Can walk on heels and toes without difficulty." R. 479. He noted that she "uses a cane as an assistive device for balance" and that "in [his] opinion, it is medically necessary." *Id.* Dr. Reiher found that the Plaintiff needed help getting on and off the exam table, but was able to rise from a chair without difficulty. *Id.* He opined that she had mild postural limitations due to back and leg pain that would impact her ability to climb, stoop, bend, crawl, kneel, crouch and reach. R. 481. She had no fine motor limitations. *Id.*

The record also contains assessments by nonexamining state agency physicians, Drs. Barrett and Wurzel, who opined that the Plaintiff retained the exertional ability to lift and/or carry up to twenty pounds, stand and/or walk for six hours in an eight hour day, and sit for six hours in an eight hour day. R. 89, 109.

<u>Plaintiff's Testimony as to her Exertional Abilities</u>

At the hearing, the Plaintiff testified that she uses a cane to walk and for balance, R. 39, 51, tires after walking half a block and at times, her legs "give up," *id.*, can stand for "like 10 minutes without moving," R. 51, and can sit for about 30 minutes. *Id.*

There are no assessments by an examining physician that indicate how long the Plaintiff can sit, stand, or walk in an eight hour day. Notwithstanding this gap, the ALJ determined that the Plaintiff could lift/carry objects weighing up to twenty pounds, stand and/or walk for four hours, and sit for a total of six hours, with a sit/stand option. The ALJ reasoned that the medical evidence did not "detail any significant loss of musculoskeletal strength or ROM (range of motion) such that claimant could not lift and/or carry to the extent of the assessed RFC." R. 23. Although he points to "notations [in the record]" showing "5/5 strength at her extremities", *id*., and normal gait and station, R. 22, the ALJ does not explain how clinical findings regarding muscle strength and gait assessed in a physical exam support his determination that the Plaintiff is able to walk and/or stand for four hours, especially in light of the record evidence and the ALJ's own finding that the Plaintiff required the use of a cane. R. 24. The ALJ also stated that recommendations by Plaintiff's physician that the Plaintiff increase her exercise "reflect the medical judgment that the claimant could safely increase her activity level." R. 23. But such recommendations do not shed enough light on the extent of the Plaintiff's exertional ability to inform an RFC determination. As to the opinion evidence, the ALJ found Dr. Klufas's opinion that the Plaintiff had poor activity tolerance due to lower extremity arthralgias and that she walked at a slow pace when she walked without an assistive device was not persuasive because it was "not supported by or consistent with the clinical examination of 5/5 extremity strength or recommendations for exercise." R. 24. Notably, the ALJ also discounted Dr. Klufas's opinion because it "did not provide any specific functional limitations." *Id.* As for Dr. Reiher's opinion, the ALJ discounted his finding that the Plaintiff required a cane for balance, stating that it was not supported by his examination findings or the Plaintiff's medical records. *Id.* The ALJ found the opinion "partially persuasive," and "accept[ed] that the claimant has some postural and no fine motor limitations." *Id.* Like Dr. Klufas's opinion,

Dr. Reiher's report was silent as to how long the Plaintiff can sit, stand, or walk in an eight-hour day.  As such, neither opinion provided information as to the Plaintiff's physical capacity, much less whether the Plaintiff could perform the exertional requirements of light work.  Finally, the ALJ found the opinion of the nonexamining state agency physicians persuasive insofar as they opined that the Plaintiff was capable of the exertional limitations of light work, but not persuasive as to the finding that Plaintiff could stand and/or walk for 6 hours because it was not consistent with "the required use of a cane."  R. 24.

The record before the ALJ was inadequate because it did not contain any evidence as to the Plaintiff's physical limitations from which the ALJ could reasonably assess the Plaintiff's RFC.  While medical source statements are not required in all cases, *see Tankisi*, 521 F. App'x at 33-34, "[t]he critical point" is that the Plaintiff's medical records must otherwise contain "the sorts of nuanced descriptions and assessments that would permit an outside reviewer to thoughtfully consider the extent and nature" of the Plaintiff's physical impairments and "their impact on her RFC."  *Sanchez v. Colvin*, No. 13 CIV. 6303, 2015 WL 736102, at *8 (S.D.N.Y. Feb. 20, 2015).  As indicated, the record here contains information about the diagnosis and treatment of the Plaintiff's physical impairments but does not contain any information as to how those ailments affect her ability to perform the physical demands of work.  None of Plaintiff's providers or examining consultants assessed her physical capacity to perform work-related activities, nor is such information contained in the medical records.  *See Williams v. Kijakazi*, No. 20-CV-8469, 2022 WL 799478, at *18 (S.D.N.Y. Mar. 16, 2022) ("Without the benefit of a functional assessment of [plaintiff's] physical impairments by a treating healthcare provider, the ALJ's RFC determination was based largely on his own interpretation of the medical records and treatment notes.")  In short, the record does not contain sufficient evidence from which the ALJ could draw

conclusions regarding Plaintiff's physical functioning and limitations, much less provide meaningful support for the particular capabilities ascribed to her by the RFC. And although the record contained functional assessments by nonexamining state agency physicians, they do not fill the gap in the record. When, as in this case, the underlying medical evidence "'do[es] not shed any light' on a claimant's RFC, the opinion of a non-examining state agency consultant is ordinarily not a sufficient substitute for the opinion of the claimant's treating provider." *Vecchitto v. Saul*, No. 3:19CV726(TOF), 2020 WL 4696791, at *6 (D. Conn. Aug. 13, 2020) (quoting *Guillen*, 697 F. App'x. at 108-09) (remand required where "the medical records obtained by the ALJ [did] not shed any light on [the plaintiff's] residual functional capacity, and the consulting doctors did not personally evaluate [the plaintiff]"). "Stated differently, opinions by non-examining consultants cannot fill the gap created by the absence of treating physician opinions when the medical records do[ ] not provide a sufficient basis to determine a claimant's RFC." *Martinez,* 2020 WL 6440950, at *8 (internal quotation marks and citation omitted). "A medical record that lacks a treating source opinion is considered 'sufficient' when its contents are comprehensive enough to facilitate an informed assessment of the claimant's impairments and [residual functional capacity]." *Id.* at *7. The medical records here do not fit that description. Because I find that the ALJ failed to adequately develop the record as to the Plaintiff's physical limitations, remand for further development of the evidence is warranted. In light of this finding, I need not reach the merits of the Plaintiff's remaining arguments. *See DeMico v. Berryhill,* No. 3:17CV805(SALM), 2018 WL 2254544, at *10 (D. Conn. May 17, 2018). Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this Ruling. On remand the Commissioner will address the other claims of error not discussed herein.

**IV.     Conclusion**

For the reasons set forth above, the Plaintiff's motion, ECF No. 13, is GRANTED and the Commissioner's motion, ECF No. 16, is DENIED.  The case is REMANDED for further development of the record.  The Clerk is instructed that, if any party subsequently appeals to this court the decision made after remand, that Social Security appeal shall be assigned to me (as the District Judge who issued the ruling that remanded the case).

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: September 16, 2022
         Hartford, Connecticut